# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Saracco*, 2014 IL App (3d) 130741

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF DINO V. SARACCO, SR., Petitioner-Appellant, and MELANIE SARACCO, Respondent-Appellee. |
| District & No. | Third District<br>Docket No. 3-13-0741 |
| Filed | November 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order granting respondent mother's motion to terminate her contribution to the college expenses of one child was reversed and the cause was remanded with directions to reinstate the original contribution order requiring respondent to pay 60% of the child's college expenses and petitioner, the disabled father, to pay 40% of the college expenses, since respondent failed to show any "substantial change in circumstances," especially when respondent's income from her employment was still nearly twice the amount of disability income petitioner received after he starting receiving an additional $11,000 to care for a minor daughter. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 07-D-60; the Hon. Brian E. Barrett, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal    Frank P. Andreano, of Brumund, Jacobs, Hammel, Davidson & Andreano, LLC, of Joliet, for appellant.

Peter Kaminsky, of Naperville, for appellee.

Panel    JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Carter and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    Dino Saracco (petitioner) appeals from an order granting Melanie Saracco's (respondent) motion to terminate/modify her contribution to college expenses. Upon review, we reverse and remand with directions.

¶ 2    FACTS

¶ 3    Petitioner and respondent married in 1982. Four children were born to the parties during the marriage. The parties divorced in 2008. Two of the four children were still minors at the time of dissolution. Respondent was ordered to pay child support. The judgment of dissolution reserved the issue of college contribution.

¶ 4    In 2010, petitioner filed a motion for contribution to college expenses with regard to one of the parties' children (Dino). Ultimately, the trial court determined that respondent would be responsible for 60% of Dino's college expenses and petitioner would be responsible for the remaining 40%. The parties did not appeal from this order.

¶ 5    In 2012, petitioner filed a motion to enforce the court's previous contribution order. The trial court granted the motion and ordered respondent to pay all outstanding amounts. The court also granted respondent leave to file a petition to terminate contribution.

¶ 6    In 2013, respondent filed a motion to terminate/modify contribution.[1] The matter was called for hearing on March 26, 2013. At the hearing, respondent stated her annual income was approximately $80,000. Petitioner's attorney stated the following with regard to petitioner's income:

>"Petitioner gets additional money because he has a minor child that lives in the home as part of his benefits. He's not taxed on that. So when he was [previously] asked about what his income was, his income as far as his tax person *** is $23,000. He does get another $11,000 for his daughter as part of his benefits of disability."

¶ 7    Dino testified he was enrolled at St. John's College. His overall grade point average (GPA) was 2.13. Dino stated he applied for all possible scholarships and loans. His remaining tuition

---

[1]Respondent's motion raised additional issues. However, the issue of contribution is the only issue before us here on appeal.

obligation after factoring in his scholarships and loans was approximately $4,000 per semester. Dino picked St. John's because "[i]t felt like home" and it offered him the most financial assistance. The trial court admonished Dino to "sign any paperwork necessary so that [respondent] may have full access to your college records." The court then continued the matter.

¶ 8 The matter resumed on June 27, 2013. Neither party was sworn in on this date. Respondent did not call any witnesses or present any evidence in support of her motion. Instead, respondent simply presented argument to the trial court. In doing so, she stated that petitioner's income has increased because he was "working and selling things, going to auctions." Petitioner's attorney denied this claim.

¶ 9 Respondent also stated that Dino refused to get a job to help pay for his tuition. The parties disputed as to whether Dino accepted all possible grants and scholarships. Respondent claimed he did not; however, she did not present any evidence in support of this claim. In response, petitioner claimed Dino did accept all possible financial assistance. Petitioner then tendered a financial statement from St. John's College indicating that Dino has accepted several scholarships, grants and loans. The following colloquy then took place:

"THE COURT: Okay. All right. Now, tell me why you want to either terminate or modify the college expenses.

RESPONDENT: Because he's, he's not helping towards it. He's, he's not talking to me again.

* * *

THE COURT: Do you have anything in regards to the statutory factors, the financial resources of the parents, the standard of living the child would have enjoyed had the marriage not been dissolved, the financial resources of the child or the child's academic performance that you'd like to tell me about?

RESPONDENT: Yes. I don't believe he's, he's academically working at the top that he should because he's had to take an extra year of school. He's had to take classes at Joliet Junior College to get back into the school. The school asked him to leave. And he took a whole semester off because his grade point average was too low, and they wrote a letter telling him that.

So I don't, I don't believe that the school[ ] [is] a good fit for him. I don't care about paying his, his tuition. What I care about is paying tuition that is going to get him what he wants. He's now on a five-year plan instead of a four-year plan.

And he keeps changing his major. He now wants to be a psychologist. Before he, he wanted to, to do math. He wanted to be a history teacher and a math teacher and a coach. He, he doesn't even know what he wants yet. So how long does he get to choose these things and not progress at all? He's not progressing in this school.

* * *

THE COURT: All. Right. Mr. Polito [(petitioner's counsel], any evidence you want to put on?

MR. POLITO: I don't Your Honor. It's my understanding from (inaudible) my client, that that $10,000 that he gets on–for Christina's [(his daughter)] social security disability income has been that way for a number of years.

THE COURT: Oh.

MR. POLITO: That order [(original 60% / 40% contribution decision)] was entered by the Court in 2011. So I'm assuming the Court took that into consideration.

RESPONDENT: I was not made aware that he was (inaudible) 2011.

MR. POLITO: With all due respect, Your Honor, (inaudible) makes it–disparity of income is still $43,000, with the $10,000–

THE COURT: Based on what?

MR. POLITO: He makes $24,000 a year in social security disability–

THE COURT: Plus $10,000.

MR. POLITO:–plus $10,000, so $34,000. She makes roughly $77,000 [(a difference of $43,000)].

THE COURT: And [respondent] pays $11,040 in child support.

\* \* \*

THE COURT: Anything else?

MR. POLITO: Nothing.

THE COURT: All right. Show the matter comes on for motion to decrease or terminate the college contribution.

\* \* \*

In looking at the statute, this has now been three years of college. And taking into account the factors, the financial resources of both parents after child support has been paid, there was a relative, equal income on both parties.

\* \* \*

Financial resources of the child. It appears that the child has taken advantage of all grants, resources, and scholarships.

Court is troubled by Mister–the child's desire not to work. The last time we had hearing on this one, the child testified he did not wanna drive as much for that job.

The child's academic performance is always an issue in college contribution. We have a child who has been going to college there for three years. He's had some average grades, based on his own testimony previously in these matters.

There is a situation we have here where the child has been put in, in an outstanding position, through his own achievements, athletically and otherwise, and by the ability of the parents. However, we have a 21-year-old child now who is choosing his own path in–as a path towards adulthood and should be encouraged.

Based on all the evidence presented, the inability of–to pay and the, the academic performance, the Court's going to terminate the obligation to contribute to college for Dino."

## ANALYSIS

¶ 11    Petitioner appeals from the trial court's order terminating respondent's obligation to pay 60% of Dino's college expenses. We have held that the pertinent question in determining whether to grant a petition for modification of a provision for payment of college expenses is whether the moving party has shown a substantial change in circumstances since entry of the

original provision. *In re Marriage of Loffredi*, 232 Ill. App. 3d 709, 714 (1992). Petitioner argues respondent failed to show the existence of a substantial change. We agree.

¶ 12    Educational expenses awarded under the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/513(a) (West 2012)) are considered a form of child support. *In re Marriage of Chee*, 2011 IL App (1st) 102797, ¶ 9. Subsection 510(a)(1) of the Act states:

"(a) *** [T]he provisions of any judgment respecting *** support may be modified ***. An order for child support may be modified as follows:

(1) upon a showing of a substantial change in circumstances[.]" 750 ILCS 5/510(a)(1) (West 2012).

¶ 13    The party seeking modification bears the burden of proving a "substantial change." *In re Marriage of Sassano*, 337 Ill. App. 3d 186, 194 (2003). Trial courts have wide latitude in determining whether a "substantial change" has occurred. *In re Marriage of Riegel*, 242 Ill. App. 3d 496, 498 (1993). Section 513(b) provides:

"In making awards *** pursuant to a petition or motion to decrease, modify, or terminate any such award, the court shall consider all relevant factors that appear reasonable and necessary, including:

(1) The financial resources of both parents.

(2) The standard of living the child would have enjoyed had the marriage not been dissolved.

(3) The financial resources of the child.

(4) The child's academic performance." 750 ILCS 5/513(b) (West 2012).

¶ 14    Initially, we note that the trial court did not specifically find a "substantial change in circumstances." Both parties concede, however, that the absence of such an express finding does not automatically mandate reversal if the record supports the existence of a "substantial change." We accept this concession. Moreover, absent some evidence to the contrary, "[we] will neither presume that error occurred in the trial court nor assume that the trial court misunderstood the applicable law." *People v. Lagle*, 200 Ill. App. 3d 948, 955 (1990).

¶ 15    The parties disagree as to the standard of review applicable when examining a trial court's determination with regard to whether a "substantial change in circumstances" has occurred. Petitioner argues for *de novo* review, whereas respondent believes an abuse of discretion standard is appropriate. Petitioner cites *In re Marriage of Hughes*, 322 Ill. App. 3d 815, 818-19 (2001):

"The substance of this appeal revolves around whether a 'substantial change in circumstances,' required under section 510(a)(1) of the Act to modify child support, may be founded on changes in financial conditions contemplated by the judgment for dissolution of marriage. This is a question of the legal effect of undisputed facts, which we review *de novo*."

Respondent cites *In re Marriage of Sassano*, 337 Ill. App. 3d 186, 194 (2003):

"A trial court's determination that there has been a substantial change in circumstances to warrant the modification lies within its discretion and will not be disturbed absent an abuse of discretion."

¶ 16    We believe the appropriate standard is abuse of discretion. The facts in the instant case are not undisputed. More importantly, however, we find that the question of whether certain facts

establish a "substantial change" involves the weighing and balancing of those facts. This is why trial courts are afforded "wide latitude" when answering this question. See *Riegel*, 242 Ill. App. 3d at 498. Thus, we will not disturb a trial court's "substantial change" finding unless no reasonable person would agree with the decision. *In re Marriage of Mitteer*, 241 Ill. App. 3d 217, 224 (1993). A trial court's independent factual findings will not be disturbed unless deemed to be against the manifest weight of the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 121.

¶ 17    We now turn to the precise question of whether the record supports the trial court's implicit and assumed finding that a "substantial change in circumstances" took place. We begin with the court's factual findings: (1) Dino "had some average grades," (2) Dino "has taken advantage of all grants, resources, and scholarships," (3) Dino "desire[d] not to work," (4) Dino's relationship with respondent is "strained," (5) Dino would have "enjoyed a similar situation today if the parties remained married," and (6) respondent "pays $11,040 in child support" per year. We defer to these factual findings as they are not against the manifest weight of the evidence. However, we believe the court's factual finding that the parties' annual incomes are relatively equal is against the manifest weight of the evidence.[2]

¶ 18    At the first hearing, respondent stated that her annual income was $80,000. It appears respondent earns this income via employment as there was some discussion of her W-2s during the hearings. If we subtract the $11,040 respondent pays in child support her remaining income is $68,960. Petitioner's income consists entirely of disability payments totaling $35,000 ($24,000 for him, $11,000 in addition due to caring for his minor daughter).[3] Neither party disputes these approximate numbers.

¶ 19    Accordingly, we find there is a substantial difference between the parties' incomes–approximately $33,960. This difference is approximately $1,000 less than petitioner's entire annual income. We also note that petitioner is disabled, whereas respondent is employed.

¶ 20    Upon review, we do not believe any reasonable individual viewing the above facts could find a "substantial change in circumstances." While respondent has alleged certain facts, she has not alleged anything "substantial" that has changed. For example, respondent has not lost her job or become burdened with new financial obligations such as medical debt. To summarize, the record reveals that Dino is an average student who has accepted all available types of financial assistance. While his relationship with respondent is clearly strained, this alone does not support a finding of a "substantial change." In fact, the relationship has been strained for some time now. Moreover, the fact that Dino does not communicate effectively with respondent is not an independently valid ground to terminate support. See *Imes v. Imes*, 52 Ill. App. 3d 792 (1977) (trial court did not abuse its discretion in modifying divorce decree so as to require father to contribute to educational expenses of his daughters even though daughters had isolated themselves from father, and even though neither daughter asked or received father's consent for her to attend college of her choice).

___

[2]The trial court did not make express factual findings as to what the parties' actual annual incomes were. However, the actual amounts do not appear to be in dispute.

[3]When computing respondent's income here on appeal, we use the $11,000 amount discussed at the first hearing rather than the $10,000 amount discussed at the second hearing.

¶ 21     In coming to this conclusion, we reject respondent's claim that Dino's "poor" grades are a "substantial change in circumstances." Significantly, the trial court, in making its factual findings, did not find Dino had "poor" grades. Instead, the court found Dino's grades were "average." Specifically, Dino's cumulative GPA hovered around the lower 2.0 region. During the first hearing, the trial court noted that "there are plenty of students out there who do not have 4.0 averages that do very well in life." We agree. While we acknowledge Dino was asked to leave St. John's for a semester, we call attention to the fact that he enrolled in three classes at a community college where he received the grade of A in all three classes. We also note that respondent acknowledges that Dino's grades have gotten better; however, they are not at the level she believes appropriate and thus believes Dino should attend a different school. The question of what school Dino should be attending is moot. The trial court correctly pointed out that Dino has been attending St. John's for over three years.

¶ 22     We acknowledge that the court generically noted Dino's "academic performance" when it decided to terminate respondent's obligation.[4] We find this curious in light of the fact that the remainder of the record reveals that the court did not appear to have a specific problem with Dino's grades. We reference the court's "average" grade finding and the discussion that many students succeed in the absence of a 4.0 GPA. Again, we hold the manifest weight of the evidence establishes that Dino's grades were "average." Moreover, we do not believe a cumulative GPA in the lower 2.0 range constitutes a "substantial change" for purposes of modification. Dino explained his grades are Bs and Cs. There is no evidence that Dino was an A student and suddenly changed to a C student. We also find it significant that, according to respondent, Dino's grades have "come up a little bit."

¶ 23     We also reject respondent's claim that Dino's decision not to get a job constitutes a "substantial change in circumstances." Again, Dino "has taken advantage of all grants, resources, and scholarships." Furthermore, Dino's decision not to work has been consistent throughout his college career. We cite the following statement by respondent: "I got him a full-time job before he went to school. He refused to go back to that during breaks to earn some extra cash for spending money or whatever." These facts do not constitute a "substantial change in circumstances." We note that respondent's only cited authority (*In re Marriage of Calisoff*, 176 Ill. App. 3d 721, 729-30 (1988)) with regard to this particular argument involved a dissolution action where the trial court held the husband solely responsible for his children's college expenses for four years. Stated another way, *Calisoff* involved the entry of an original support order, not modification of an already existing support order. Thus, the question of whether a "substantial change in circumstances" took place was not considered by the *Calisoff* court.

¶ 24     Lastly, respondent makes much of the fact that she allegedly did not know that petitioner was receiving an additional $11,000 in disability payments due to him caring for the parties' minor daughter. Respondent concludes that this allegation alone supports a finding of "substantial change in circumstances" since petitioner's income has increased. We reject this claim for three reasons.

¶ 25     First, the question of when respondent found out about the $11,000 is irrelevant. The pertinent question is when petitioner began receiving the $11,000. Respondent has failed to

---

[4]"Based on all the evidence presented, the inability of–to pay and the, the academic performance, the Court's going to terminate the obligation to contribute to college for Dino."

present any evidence regarding this question. She merely stated that she found out upon reviewing petitioner's recent financial documents. Petitioner's attorney, however, stated that petitioner has been receiving the additional disability payments for "a number of years." Again, it was respondent's burden to show a "substantial change." See *Sassano*, 337 Ill. App. 3d at 194. Respondent could have subpoenaed petitioner's past financial records (financial affidavits or income tax filings), which would have conclusively established when petitioner began receiving the $11,000. Respondent chose not to do so.

¶ 26 Second, the record is devoid of any evidence that at the time the original 60%-40% contribution order was entered the trial court was not aware of the $11,000. Petitioner's attorney argued that because petitioner had been receiving the additional disability payments for "a number of years," it is reasonable to assume "the Court took that into consideration" when it entered its original contribution order. Again, respondent failed to present any evidence to the contrary. Thus, we find this assumption reasonable. In accepting this assumption, we emphasize that respondent did not specifically refute counsel's claim that petitioner had been receiving the payments for "a number of years." Instead, respondent's entire argument was focused on when she found out about the payments.

¶ 27 Third, even assuming that petitioner only recently started receiving the additional $11,000, the disparity between the parties' incomes is still significant. Thus, we do not believe an increase in petitioner's income from $24,000 to $35,000 purportedly since the original contribution order constitutes a "substantial change in circumstances" in light of the fact that respondent's income is still almost double that of petitioner.

¶ 28 For the reasons stated above, we reverse the trial court's judgment. We remand the matter with instructions that the original contribution order be reinstated. Thus, respondent is responsible for 60% of all of Dino's past and future college expenses. Petitioner is responsible for 40% of all of Dino's past and future college expenses.

¶ 29 Reversed and remanded with directions.