2021 IL App (1st) 191725-U

FOURTH DIVISION
March 25, 2021

No. 1-19-1725

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| | ) | Appeal from the |
| LISA THOMAS, | ) | Circuit Court of |
| | ) | Cook County |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 96 D 56305 |
| | ) | |
| DANIEL DURHAM, | ) | |
| | ) | Honorable |
| Respondent-Appellant. | ) | D. Renee Jackson, |
| | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Affirming the judgment of the circuit court of Cook County denying a father's petition to modify or terminate his obligation to contribute to his non-minor child's college expenses.

¶ 2   Daniel Durham (Daniel) appeals from an order of the circuit court of Cook County denying his petition to modify or terminate his obligation to contribute to the college expenses of his non-minor son, De'Marco Thomas (De'Marco). Daniel argues that his obligation should be modified or terminated based on (a) the alleged failure of De'Marco and his mother Lisa Thomas

(Lisa) to timely execute and provide consent forms to allow Daniel to access his son's educational records and (b) De'Marco's "poor grades." Daniel further contends that the circuit court erred in barring him from filing future pleadings without leave of court. As discussed herein, we affirm.

¶ 3                                BACKGROUND

¶ 4      Lisa and Daniel, who never married, have engaged in litigation regarding multiple issues since De'Marco was born in May 1996, including visitation and child support. The instant appeal involves Daniel's obligation to contribute to De'Marco's post-secondary educational expenses. De'Marco commenced his collegiate studies in August 2014 and attended institutions of higher learning: University of Illinois Chicago (UIC) between August 2014 and May 2015; South Suburban College (South Suburban) beginning in July 2015; and Robert Morris University (RMU) between June 2017 and February 2019. He graduated from RMU, where he majored in business administration with a focus on management. A non-exhaustive summary of Daniel and Lisa's lengthy dispute regarding their son's college expenses is provided below.

¶ 5                          Petition for Contribution

¶ 6      In June 2014, Lisa filed a petition for contribution for De'Marco's higher education expenses pursuant to section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513 (West 2014)).[1] She represented that De'Marco had graduated from high school and would be enrolled in UIC in the fall semester of 2014. Lisa sought an order requiring Daniel to contribute to their son's tuition and other education-related expenses.

¶ 7      Daniel was ordered to pay $1714.50 to UIC in December 2014. When he failed to timely

---

[1] Although the Act is the "Illinois Marriage and Dissolution of Marriage Act," courts have equitably applied section 513 to award college educational expenses for the child of unmarried parents, like De'Marco. *E.g.*, *Rawles v. Hartman*, 172 Ill. App. 3d 931, 937 (1988).

submit the payment, Lisa filed an emergency petition for rule to show cause. Daniel responded, in part, that Lisa had not produced documentation supporting her representation that UIC had placed a "hold" on their son's account based on Daniel's non-payment. On January 9, 2015, the circuit court entered a second order directing Daniel to make payment to UIC. The record indicates that Daniel tendered $1200 to Lisa on January 16, 2015, to be applied toward their son's tuition; he was then ordered to pay the balance of $514.50.

¶ 8      On December 1, 2016, Lisa filed a memorandum in support of her petition for contribution. Lisa stated that she had incurred $12,250 in federal loans relating to her son's UIC education and had paid $5206 for his summer school tuition and textbooks at South Suburban. According to Lisa, De'Marco could not continue his education at UIC since she could not afford to pay the tuition. She further represented that she had suffered two strokes and that De'Marco had transferred to South Suburban to provide care for her. Lisa contended that – as De'Marco was a full-time student under the age of 23 and was not failing any of his classes – Daniel should reimburse her for past college expenses in the amount of $18,660.50 and pay one-half of their son's future college expenses. Daniel asserted, in part, that the circuit court had directed Lisa to secure De'Marco's signature on a release permitting Daniel to "talk to UIC," which she failed to do. Daniel argued that Lisa's petition, therefore, should be denied as he was unable to verify his son's college enrollment or expenses.

¶ 9      On December 22, 2016, Daniel was ordered (a) to contribute 50% for all of De'Marco's future college expenses, including tuition, once De'Marco sent his grades and invoices from the college to Daniel and (b) to pay past expenses of $18,660 at a rate of $300 per month. The circuit court denied Lisa's request for sanctions and attorney fees.

¶ 10                                                    2017 Litigation

¶ 11     Lisa filed a motion to reconsider the December 22, 2016 order, challenging the court's denial of her request for sanctions and attorney fees.  Daniel subsequently filed a motion to reconsider, wherein he argued that: (a) the order should be amended to reflect that his obligation to pay 50% of future college expenses should be *after* the application of any grants or loans to the balance; (b) the $18,660 award essentially required him to pay 100% of the past expenses; and (c) there was a "continuing problem" of lack of access to the documentation demonstrating the amounts due.  Lisa responded that Daniel's motion was untimely and that he did not allege any new evidence, change in the law, or error in the court's application of existing law.

¶ 12     While the motions to reconsider were pending, Daniel filed an emergency motion in July 2017 to suspend all support payments until the next court date.  He represented that he had lost his job and had no source of income.  Lisa filed a motion to strike Daniel's emergency motion.

¶ 13     On August 28, 2017, the circuit court denied Daniel's emergency motion and granted Lisa's motion to strike.  The court also denied Daniel's motion to reconsider, finding that he was attempting to have a rehearing on matters which had already been adjudicated.  As to Lisa's motion to reconsider, the court allowed her to file a petition for attorney fees but denied the remainder of her requested relief.  The order provided that "[a]ll orders regarding child support and contribution to college expenses shall stand."

¶ 14     Daniel filed a notice of appeal from the August 28, 2017 order (appeal number 1-17-2594).  The appellate court subsequently dismissed the appeal for want of prosecution.

¶ 15                                                    2018 Litigation

¶ 16     Daniel filed a motion in May 2018 to modify or terminate his entire obligation to contribute to De'Marco's educational expenses pursuant to the order entered on December 22,

2016. Daniel asserted that Lisa and De'Marco failed to provide the consents required for Daniel to receive copies of his son's school records pursuant to section 513(f) of the Act (750 ILCS 5/513(f) (West 2018)). Daniel also alleged, on information and belief, that De'Marco failed to maintain a "C" grade point average during some or all his collegiate studies, which resulted in the termination of Daniel's contribution obligation pursuant to section 513(g) of the Act. Lisa responded, in part, that Daniel neither requested the school records from her nor did he attempt to subpoena the information from their son's schools. She further represented that De'Marco's current grade report listed a 3.33 grade point average.

¶ 17    The circuit court entered an order on June 28, 2018, allowing the parties to file short briefs regarding the interpretation of the word "shall" in section 513(f), which provides, in part, that "each party and the child shall sign any consent necessary for the educational institution to provide a supporting party with access to the child's academic transcripts, records and grade reports" (750 ILCS 5/513(f) (West 2018)). In her brief, Lisa contends, in part, that based on the "volatile and violent" relationship between Daniel and De'Marco, it was not in their son's best interest to provide Daniel with direct access to his school records, which would allow Daniel to know his specific class schedule and confront his son outside of his classes. Lisa asserted that it was her practice to send De'Marco's grade reports to Daniel at the end of each semester, which she claimed she did in compliance with the December 22, 2016 order. Daniel apparently did not file a brief; his subsequent oral request to do so was denied.

¶ 18    On September 27, 2018, the circuit court denied Daniel's motion to modify or terminate his obligation. The circuit court found Lisa's testimony[2] regarding the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g) – a federal law which protects the privacy

_____

[2] The record on appeal does not include any transcript or other report of proceedings regarding this hearing.

of student education records – to be credible. The court further found that Daniel failed to provide evidence that De'Marco had a grade point average below a "C." Among other things, Daniel was held in indirect civil contempt for his willful failure to pay a portion of the back-due amount for his son's educational expenses. De'Marco was ordered to compile all transcripts and scholastic documents and provide them to Daniel by certified mail within 60 days.

¶ 19                                    2019 Litigation

¶ 20    In January 2019, Daniel filed a petition to modify or terminate the December 22, 2016 order for college contribution. His contention was De'Marco's failure to sign the necessary releases for Daniel to obtain his present and past academic transcripts, records, and grade reports was willful and contumacious. Daniel subsequently filed an emergency petition to stay an upcoming hearing, alleging that De'Marco had not executed the required releases. De'Marco apparently signed the releases shortly thereafter, and the emergency petition was withdrawn.

¶ 21    Daniel subsequently submitted a "memorandum in support of non-contribution to college expenses" arguing, in part, that the December 22, 2016 order was void and should be vacated *nunc pro tunc* as De'Marco had not maintained a "C" average pursuant to section 513(g) of the Act.[3] Lisa responded, in part, that Daniel has repeatedly tried to relitigate the December 22, 2016 order; she requested that Daniel be barred from further filings without leave of court.

¶ 22    During a two-day hearing, the circuit court heard testimony from Daniel, De'Marco, and Lisa. Daniel testified that he was unable to obtain his son's academic records until early 2019. On cross-examination, he was questioned regarding multiple certificates of service which reflected that his son's transcripts and other school records were transmitted to Daniel's counsel throughout 2018. De'Marco testified, in part, that he had signed releases to allow Daniel access

---

[3] Although not properly filed, the circuit court considered portions of the memorandum as an amendment to Daniel's petition.

to his records at UIC and RMU. De'Marco had received educational grants and had personally incurred approximately $40,000 in student and personal loans. His quarterly grade point average in the fall of 2018 was 3.66, and his cumulative grade point average was 2.95. During cross-examination, De'Marco testified that his cumulative grade point average at UIC was 1.18. On redirect examination, De'Marco testified that his mother had two strokes during his enrollment at UIC, so "school wasn't really a priority" as he helped his mother with her recovery. Lisa testified that she had provided certain release forms, transcripts, and tuition bills to Daniel in 2018. She also detailed the payments she made and debts she incurred to finance her son's education.

¶ 23    Lisa subsequently filed a court-ordered accounting of college expenses in May 2019, wherein she alleged that Daniel owed $22,004.50. Daniel's accounting indicated that his remaining obligation was $16,843.33.

¶ 24    On July 23, 2019, the circuit court entered a memorandum opinion and order. The court found that while the testimony of Lisa and De'Marco was "difficult to follow" regarding the exact dates on which they provided Daniel consents and information, Daniel's argument that no consent or information was provided until 2018 or 2019 was "not credible." The court further noted that section 513(f) of the Act provides that the failure to provide consents "may" – not "shall" – be a basis for modification or termination. The court found that Daniel did not demonstrate a substantial change in circumstance and that any modification or termination based on Daniel's "consent" argument would not be equitable or in De'Marco's best interest.

¶ 25    The circuit court also rejected Daniel's contention that De'Marco's UIC grade point average should, by operation of law, result in a modification or termination of his educational expense obligation. The court found that De'Marco demonstrated that he had "good cause," *i.e.*,

Lisa's strokes, for failing to maintain a cumulative "C" grade point average at UIC. The court further noted De'Marco's dedication to his undergraduate studies, as well as the improvement of his grades from 2014 to 2019.

¶ 26 The circuit court held that Daniel did not meet his burden of establishing that the college expenses should be modified or terminated or that his son's failure to sign the consents was willful and/or contumacious. The court denied his petition, ordered him to pay a total of $21,004.50 in installments, and barred him from filing other pleadings in this matter without prior leave of court. On August 22, 2019, Daniel filed a notice of appeal from the July 23, 2019 order and certain underlying orders; he also challenged the December 22, 2016 order as "void."[4]

¶ 27                                                        ANALYSIS

¶ 28 Daniel advances two primary arguments in support of his contention that the circuit court erred in denying his petition to modify or terminate his obligation to contribute to De'Marco's college expenses. First, Daniel asserts that the failure of De'Marco and Lisa to timely sign and provide the consents regarding the release of De'Marco's academic records was willful. Second, he argues that his contribution obligation should have terminated when his son failed to maintain a "C" grade point average. Daniel further contends that the circuit court erred in barring him from filing future pleadings without leave of court. Lisa challenges the foregoing contentions.

¶ 29 Section 513 of the Act grants the circuit court the discretion to extend a parent's obligation to support his or her children beyond their minority when such support is for educational purposes. *In re Marriage of Petersen*, 2011 IL 110984, ¶ 12; *In re Marriage of Koenig*, 2012 IL App (2d) 110503, ¶ 11. A circuit court may order either or both parents to pay their non-minor child's educational expenses "as equity may require." 750 ILCS 5/513(a) (West

_____

[4] Judge Christopher Lawler issued the December 22, 2016 order; the July 23, 2019 order was issued by Judge D. Renee Jackson.

2018).  Accord *Petersen*, 2011 IL 110984, ¶ 25.

¶ 30    An order entered pursuant to section 513 remains modifiable as a provision for payment of college expenses is considered in the nature of child support rather than a property settlement. *Koenig*, 2012 IL App (2d) 110503, ¶ 11.  Accord *In re Marriage of Saracco*, 2014 IL App (3d) 130741, ¶ 12 (noting that educational expenses awarded under the Act are considered a form of child support).

¶ 31    The key question in determining whether to grant a petition for modification of a college contribution obligation is whether the movant has demonstrated a substantial change in circumstances since the entry of the original provision.  *Saracco*, 2014 IL App (3d) 130741, ¶ 11. A circuit court is afforded wide latitude when determining whether certain facts establish a "substantial change."  *Id.* ¶ 16.  We will not disturb a court's "substantial change" finding unless there was an abuse of discretion, *i.e.*, no reasonable person would agree with the decision.  *Id*. Accord *In re Marriage of Baumgartner*, 2014 IL App (1st) 120552, ¶ 45.  A circuit court's independent factual findings will not be disturbed unless deemed to be against the manifest weight of the evidence, *i.e.*, when an opposite conclusion is apparent or when the findings appear to be arbitrary, unreasonable, or not based on the evidence.  *Saracco*, 2014 IL App (3d) 130741, ¶ 16; *In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 132077, ¶ 41.

¶ 32    Daniel contends that De'Marco failed to comply with section 513(f) of the Act when he did not timely provide consents for his father to access his academic records.  Section 513(f) provides, in part: "If educational expenses are ordered payable, each party and the child shall sign any consent necessary for the educational institution to provide a supporting party with access to the child's academic transcripts, records, and grade reports."  750 ILCS 5/513(f) (West 2018).  Section 513(f) continues, however, that the "[f]ailure to execute the required consent *may*

be a basis for modification or termination of any order entered under this Section." (Emphasis added). *Id*. As the circuit court observed, the legislature's use of the word "may" – as opposed to "shall" – indicates that the failure to execute a required consent does not necessarily compel the modification or termination of any contribution obligation. *E.g.*, *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 41, n.2 (noting that legislative use of "may" generally is regarded as indicating a permissive or directory reading whereas use of the word "shall" generally is considered to express a mandatory reading). See *People v. Reed*, 177 Ill. 2d 389, 393 (1997). In the instant case, the circuit court heard testimony from Daniel, Lisa, and De'Marco and determined that modification or termination of Daniel's college contribution obligation based on his "consent" argument was not warranted. The circuit court was not only familiar with the parties' contentions regarding this issue, but also was in the best position to judge the credibility of the witnesses. *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004). Based on our review of the record, the circuit court's determination was not erroneous.

¶ 33 Daniel also contends that De'Marco failed to comply with court orders directing him to provide his scholastic documents. Although Daniel frames this issue on appeal in terms of "indirect civil contempt," he did not properly pursue a contempt finding against De'Marco (or Lisa) in the circuit court, *i.e.,* he did not file a petition for rule to show cause. A petition for rule to show cause is the method for notifying the court that an order may have been violated; the rule to show cause is the method by which the court brings the parties before it for a hearing. *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 508 (1993) (noting that the petition and the rule to show cause operate jointly to inform the alleged contemnor of the allegations). In any event, there is no indication in the record that the circuit court erred in finding that Daniel did not establish that De'Marco's failure to sign consents was willful and/or contumacious. *E.g.*,

*Saracco*, 2014 IL App (3d) 130741, ¶ 16. See also *In re Marriage of Knoll and Coyne*, 2016 IL App (1st) 152494, ¶ 50 (providing that whether a party is guilty of contempt is a question of fact, and a reviewing court should not disturb the circuit court's determination unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion).

¶ 34    Daniel next contends that the trial court erred in finding that De'Marco's "poor grades" and the delay in presenting those grades did not constitute a substantial change in circumstances. Section 513(g) of the Act currently provides, in part, that "[t]he authority under this Section to make provision for educational expenses terminates when the child *** fails to maintain a cumulative 'C' grade point average, except in the event of illness or other good cause shown." 750 ILCS 5/513(g) (West 2018). Although subsection (g) was added to the statute in 2016 (see P.A. 99-90, § 5-15 (eff. Jan. 1, 2016)), Illinois courts had previously considered the non-minor child's academic performance when determining whether to modify or terminate a parent's obligation to contribute to college expenses. *E.g.*, *Saracco*, 2014 IL App (3d) 130741, ¶ 21.

¶ 35    In the instant case, the circuit court found that there was "good cause shown" for De'Marco's failure to maintain a "C" grade point average at UIC. Based on the testimony from both De'Marco and Lisa regarding her significant health issues – including two strokes during his UIC enrollment – this finding does not appear to be against the manifest weight of the evidence. *Moorthy*, 2015 IL App (1st) 132077, ¶ 41. We also reject Daniel's reliance on *In re Marriage of Baumgartner*, 2014 IL App (1st) 120552. In affirming the circuit court's modification of a marital dissolution judgment to terminate a parental obligation to pay for the son's college expenses, the *Baumgartner* appellate court noted that the "evidence and the inferences from that evidence strongly support the trial court's determination that [the son] lacked the desire and the ability to further his education." *Id.* ¶ 54. In contrast to the non-minor

child in *Baumgartner*, the record herein indicates that De'Marco possessed both "the desire and the ability," as evidenced by his consistent commitment to pursuing his education despite financial and other challenges, the significant improvement in his grades, and his successful attainment of a college degree.

¶ 36    For the foregoing reasons, we conclude that the circuit court did not abuse its discretion in denying Daniel's petition to modify or terminate his college contribution obligation.  We note that the parties agree that Daniel is entitled to a credit in the amount of $284.01, reflecting 50% of an amount issued as a refund by RMU.

¶ 37    Daniel finally contends that the trial court erred in precluding him from filing future pleadings without leave of court.  Simply put, we reject this contention.  The record is clear that Daniel has attempted to challenge the order entered on December 22, 2016, through a series of legal maneuvers, including, but not limited to, a motion to reconsider, an emergency motion to suspend payments, and a prior appeal which he failed to prosecute.  We are untroubled by the circuit court's narrowly tailored effort to limit Daniel's ability to commandeer its docket.  See *People v. Austin*, 2014 IL App (4th) 140408, ¶ 24 (noting that courts may take measures to restrain litigants from maintaining vexatious litigation).

¶ 38                                CONCLUSION

¶ 39    Except as provided above with respect to the agreed-upon credit in the amount of $284.01, the judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 40    Affirmed.