THE PEOPLE *ex rel.* MARGARET (MURCH) STOKELY, Plaintiff-Appellee, v. WILLIAM H. GOODENOW, Defendant-Appellant.

Fourth District   No. 4—91—0393

Opinion filed November 27, 1991.

William H. Goodenow, of Rockford, appellant *pro se.*

Thomas J. Difanis, State's Attorney, of Urbana (Thomas P. Sweeney, Assistant State's Attorney, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

This is a *pro se* appeal by the defendant William H. Goodenow from an order of the circuit court of Champaign County modifying a previous order for payment of child support. The Illinois Department of Public Aid on behalf of Margaret Murch, now known as Stokely, plaintiff, mother of Rose Stokely, born February 28, 1983, filed the petition. Defendant had previously been adjudicated the father of Rose, and the determination was affirmed by this court. (*People ex rel. Murch v. Goodenow* (1984), 125 Ill. App. 3d 1176 (unpublished order under Supreme Court Rule 23).) The primary issue presented for review by this appeal is whether the modification order resulted from an abuse of discretion by the trial court. Defendant contends the trial court erred by ordering him to pay child support of $205, to be paid semimonthly, by finding an arrearage of $1,755, and by directing payment to be withheld from defendant's paycheck.

The petition to increase child support was filed on November 13, 1990. The petition indicated the previous order of May 6, 1985, set child support payments at $40 per week. Also filed on November 13, 1990, was a copy of a "Notice to Appear and Request to Produce" pursuant to Supreme Court Rule 237(b) (134 Ill. 2d R. 237(b)) sent to defendant indicating a hearing was scheduled for Monday, December 3, 1990, at 3 p.m. in courtroom "G," Traffic Court Building, in Urbana, Illinois. At the bottom of the notice, the addressee was

warned that failure to appear may result in an order of default or issuance of body attachment for his arrest. Defendant failed to appear and body attachment issued with bond set at $2,000. On January 11, 1991, the attachment order was filed showing service by the Winnebago County sheriff's department on January 10, 1991, that defendant had "Bonded out," and indicating "court date—1/30/91 'F' " at 1:30 p.m. On that date, defendant's attorney filed an appearance, and the cause was continued until further order. On March 14, 1991, plaintiff again filed a copy of a Rule 237 notice addressed to defendant in care of his attorney and setting a hearing on April 11, 1991, at 10:30 a.m. The docket entry of April 11, 1991, shows plaintiff appeared by attorney, but there was no appearance by defendant. On the court's motion, the cause was set for hearing on May 6, 1991, at 11:30 a.m. with plaintiff to give notice. On April 19, 1991, plaintiff sent defendant a notice and, on April 24, 1991, an amended notice. The hearing was finally conducted on May 6, 1991.

At the hearing, defendant testified he is an associate professor at Rock Valley College. He receives paychecks amounting to $2,496 per month for nine months of the year and he is paid on a bimonthly basis. Child support payments are not deducted from his paycheck. There were, however, deductions of $1,210 during 1990 as payment to a credit union for an automobile loan and $300 as a contribution to "United Fund." The only other deductions are for taxes and retirement. His pay stub for the pay period ending December 31, 1990, indicates a year-to-date gross pay of $35,156.30, including $2,812.83 withheld for retirement, $6,244.31 for Federal income tax, $944.23 for State income tax, and $509.79 for social security. Defendant's 1989 Federal income tax return also shows an application for a refund of $1,380.91. On occasion, defendant has had some projects on which he has worked over the summer. During the nine months he is paid, he saves enough to cover anticipated living expenses of $600 per month for the months of June, July, and August.

Defendant's financial affidavit indicates he owns assets with a total value of $15,630, including a $5,780 bank account. His liabilities include $4,825 for a car loan, $623 for Mastercard, $310 for Discover Card, $3,500 to William Groenier, and $1,500 to the estate of Alvin Hurst. According to his affidavit, defendant's monthly debt payment is $487, which includes the $220 deducted from his paycheck for the car loan. He pays $40 per week for child support, and he has additional monthly living expenses for rent ($380), food and cleaning ($320), gas and electric ($55), transportation ($80), clothes (purchase and dry cleaning) ($31), insurance ($35), medical ($66), telephone and

postage ($94), professional journals and books ($46), business travel ($55), photography equipment and supplies ($56), entertainment ($108), and gifts ($32).

■ In paternity actions, the modification of child support orders is governed by section 510 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 510). (Ill. Rev. Stat. 1989, ch. 40, par. 2516.) Under section 510 of the Act, modification of child support may be made upon a showing of a substantial change of circumstances as indicated by an examination of the circumstances of the child and the parents. An increase in the child's needs can be presumed on the basis that the child has grown older and the cost of living has risen. This increase in the child's needs is balanced against the relative abilities of the parents to provide for those needs.

■ Once the threshold question of substantial change in circumstances is met, the same factors are considered in setting the amount of modified child support as were considered in formulating the original amount. (*Fedun v. Kuczek* (1987), 155 Ill. App. 3d 798, 508 N.E.2d 531.) Neither defendant's appellant brief nor reply brief contests the trial court's determination of a substantial change in circumstances. Therefore, we conclude the trial court did not err in finding a substantial change in circumstance. At the 1985 hearing, the trial court set the support at $40 per week although defendant's gross wages were $30,000, less withholding, $5,948; FICA, $2,115.12; and State income tax, $724.08, leaving a net income of more than $22,000. Applying the guideline percentage would have meant a support payment substantially more than $40. At that hearing, the trial court indicated the mother was healthy, able to work, and should also provide financial assistance in support of the child. Without in any way suggesting that such a reason is an appropriate basis for deviating from the statutory child-support guideline, the trial court did not in the instant case consider the mother's failure to work a factor in determining the amount of support to be paid by defendant. A previous special finding made in a support order which varies from the guideline and which is no longer found to be a factor is a proper consideration in determining a substantial change in circumstances.

■ The guideline amount for child support for one child is 20% of the supporting parent's net income. (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(1).) Net income means all income less Federal and State income taxes, social security payments, mandatory retirement contributions, union dues, health insurance premiums, prior obligations for support and maintenance, expenditures to repay debts incurred as reasonable

and necessary for the production of income, medical expenses necessary to preserve life and health, and reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts. (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(3).) This guideline must be applied unless, after reviewing all relevant factors, a reason is found to deviate from the guideline. Among the relevant factors to be considered are the child's financial resources, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the parents been married, the physical, emotional, and educational needs of the child, and the financial resources and needs of the noncustodial parent. Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2).

Defendant does not argue that the $410-per-month support payments do not conform to the 20% guideline. Nor can he because calculation based on the year-to-date figures on defendant's December 31, 1991, payroll stub shows compliance with the guideline. Additionally, there was an exhibit indicating a Federal tax refund for 1989, payable in 1990, was applied for.

■ Defendant argues that there were good reasons not to apply the guideline initially and that those reasons still exist. He contends that if his pay only increased 8% over the years, the child support should also increase only 8%. He further complains that the child's mother is still unemployed and is not doing enough to contribute to the support of this child.

Even assuming defendant's net income increased only 8% over the years between child support orders, we do not accept his conclusion that the modification of child support payments was an abuse of discretion. Defendant suggests the reason for the order setting child support payments at $40 per week in 1985, below the guideline, was because the trial court then believed the mother should be working and helping to support the child. The child's mother's public-aid status is not a reason to deprive the child of support from the noncustodial parent who certainly has the financial ability to meet the payments. There is nothing in this record which justifies deviation from the statutory guideline, and the trial court did not commit an abuse of discretion in ordering defendant to pay $205, bimonthly, as and for child support. Nor do we find that this award results from bias, prejudice or sexual discrimination against defendant, or from the current budget crisis of the State of Illinois.

Nor was it error for the trial court to issue an order of withholding to take effect immediately. Section 706.1(B) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 706.1(B)(1)) states in relevant part:

"Upon entry of any order for support on or after January 1, 1984, the court shall enter a separate order for withholding which shall not take effect unless the obligor becomes delinquent in paying the order for support or the obligor requests an earlier effective date; except that the court may require the order for withholding to take effect immediately.

On or after January 1, 1989, the court shall require the order for withholding to take effect immediately, unless a written agreement is reached between both parties providing for an alternative arrangement, approved by the court, which insures payment of support. In that case, the court shall enter the order for withholding which will not take effect unless the obligor becomes delinquent in paying the order for support."

There was no alternative arrangement evidenced by a written agreement approved by the court. Therefore, the order of withholding was proper.

■ As to the calculation of the arrearage, defendant argued the arrearage based on the increase in child support from December 1, 1990, to the date of the hearing, May 6, 1991, should have been $1,301.67 instead of $1,755 because the trial court failed to take into consideration the payment of child support under the preexisting order during the same period. The plaintiff concedes there was an error in the calculation of the arrearage, indicating the trial court failed to consider the seizure of a Federal income tax refund, which was applied to support payments and for which credit was acknowledged on March 6, 1986. Since the parties agree, although for different reasons, that there was a miscalculation of the arrearage, the determination thereof will be reversed and the cause will be remanded for a recalculation of the arrearage. In doing so, however, we note the trial court did not commit an abuse of discretion in finding that the increase in payment for child support should begin December 1, 1990. Modification of child support payments can be had only as to those installments accruing subsequent to due notice by the moving party of the motion for modification. (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) On November 13, 1990, plaintiff sent defendant notice of a hearing scheduled for December 3, 1990. Defendant does not argue he did not receive notice, but only that he could not attend the December 3 hearing because of a blizzard and that the State was not ready to proceed then anyway as shown by the continuance of a subsequent hearing.

Routine delays in the judicial process do not alter the fact that the trial court has the discretion to make the modification retroactive to the time of giving due notice of the filing of the motion. (See *In re*

808

*Marriage of Geis* (1987), 159 Ill. App. 3d 975, 512 N.E.2d 1354 (applying the prior law allowing retroactive application of the modification order to the date of filing the petition for modification).) We find no abuse of discretion here.

■ Finally, defendant argues that the trial court should not have issued a contempt of court citation for his failure to appear on December 3, 1990, and asks this court to order the circuit court to refund his $200 bond money. We find nothing in the record which indicates defendant was held in contempt of court for failure to appear. The body attachment directs defendant to appear to show cause why he should not be adjudged in contempt for failure to appear on December 3, 1990. Plaintiff now concedes defendant is entitled to get his bond money back or to have it applied to his support obligation. However, at this time, there is no order for this court to review. On remand, the defendant can move the court to dismiss the rule to show cause and to release the bond money.

For the foregoing reasons, the judgment of the circuit court of Champaign County is reversed as to the arrearage calculation and remanded for a recalculation. In all other respects, the judgment is affirmed.

Affirmed in part; reversed in part, and remanded with directions.

LUND, P.J., and KNECHT, J., concur.