**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 180193-U

Order filed December 18, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| STACY CONNELLY, | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois. |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-18-0193 |
| and | ) | Circuit No. 14-D-1254 |
| | ) | |
| RYAN CONNELLY, | ) | The Honorable |
| | ) | Domenica Ann Osterberger |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices Carter and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  Trial court did not abuse its discretion in ruling that father failed to establish substantial change in circumstances necessary to modify child support order entered two years earlier where increases in parents' incomes were contemplated at time of marital settlement agreement and father sought increase in parenting time with children.

¶ 2        Petitioner Stacy Connelly and respondent Ryan Connelly entered into a joint parenting agreement (JPA) and marital settlement agreement (MSA) in 2015 that awarded residential custody of the parties' two children to Stacy and required Ryan to pay Stacy child support. Less

than a year later, Ryan filed a petition to increase his parenting time, which the trial court granted. One year later, Ryan filed a petition to modify child support. Following a hearing, the trial court denied Ryan's petition. Ryan appeals, arguing that the trial court's denial of his petition constituted an abuse of discretion. We affirm.

¶ 3                                                    BACKGROUND

¶ 4       The parties married in 2005. During their marriage, they had two children, one born in 2007, and one born in 2009. In 2014, Stacy filed a petition for dissolution of marriage. In June 2015, the parties approved a JPA, and the trial court entered an order of joint custody. The judgment named Stacy as the residential parent of the children and established a visitation schedule for Ryan. Under the schedule, Ryan had parenting time with the children as follows: (1) every Wednesday from 5:00 p.m. to Thursday at 8:00 a.m., (2) every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m., (3) on four to five specified holidays a year, (4) on Father's Day, (5) on a portion of each child's birthday, (6) during half of winter break, (7) during spring break every other year, and (8) for two nonconsecutive weeks during the summer.

¶ 5       The trial court entered a judgment for dissolution of marriage in September 2015, which incorporated the parties' MSA. In the MSA, Stacy was awarded as "her sole and exclusive property" a "Raymond James portfolio and the receipt of life insurance proceeds in the approximate total amount of $750,000." The MSA required Ryan to pay child support to Stacy of $1,500 per month, which was 28% of Ryan's "net annualized salary of $100,000", plus 28% of "the net of any future performance bonus, commission, or additional income over [his] current annual base gross income of $100,000."

¶ 6       In May 2016, Ryan filed a petition to increase his parenting time. A few months later, the parties entered into an agreed order that (1) extended Ryan's weekend visitation from Sunday to

Monday year round, (2) granted Ryan parenting time every other Monday during the school year, (3) expanded Ryan's summer weekend visitation so that it began on Thursdays instead of Fridays, and (4) discontinued Ryan's Wednesday parenting time every other week in the summers.

¶ 7    In October 2017, Ryan filed an amended petition to modify child support. In the petition, Ryan alleged that a substantial change in circumstances warranted a modification of child support because (1) his annual salary had increased from $100,000 to $110,000, (2) Stacy's income had increased by approximately 50%, and (3) his parenting time had increased from 32% to more than 45%.

¶ 8    The trial court held hearings on Ryan's petition. The evidence established that Stacy's annual salary in 2015 was $66,581. She also earned dividend income of $16,194 that year from the Raymond James portfolio she was awarded in the MSA. In 2016, Stacy's salary was $73,775. In 2017, Stacy's annual salary was $75,000. That year, Stacy also received a $5,000 bonus from her employer and $23,232 in dividend income from the Raymond James portfolio.

¶ 9    Stacy testified that the Raymond James portfolio and life insurance proceeds awarded to her in the MSA were an inheritance from her grandmother and great-aunt. Stacy testified that Ryan knew about the inheritance at the time of the dissolution judgment. She admitted that she did not include dividend income from the portfolio in her 2015 Income/Expense Affidavit filed in the dissolution case.

¶ 10    Stacy agreed that Ryan's visitation with the children has increased since the dissolution. She determined that Ryan spent approximately 137 nights with his children in 2017. Ryan testified that his time with his children has increased since August 1, 2016. He initially testified that he spent 151 nights with his children in 2017, but later admitted that the total was 148 nights. Ryan

3

testified that he spends more money when the children are with him for food, clothes, daycare, gas, activities and entertainment.

¶ 11 Ryan testified that he is a financial planner and employed by Waddell & Reed. At the time of the dissolution, he was earning $100,000 per year. In 2016, he received a promotion and earned $110,000 per year at the time of the hearing. In 2017, Ryan paid Stacy child support of $1,500 per month, plus $14,740 based on his bonus income. Ryan never testified that he did not know Stacy would receive dividend income from the Raymond James portfolio.

¶ 12 After Ryan testified, Stacy moved for a directed finding in her favor, which the trial court granted. The trial court found that Ryan failed to establish a substantial change in circumstances because (1) Ryan's 10% salary increase did not constitute a substantial change, (2) "the marital settlement agreement precludes consideration of a change in Ryan's salary as a basis to modify child support" because the MSA contains a "true-up" provision requiring Ryan to pay 28% of any income over his base salary at the time of the dissolution, (3) Stacy's increase in income does not amount to a windfall for her and was considered by the parties at the time of the MSA, and (4) Ryan's increased parenting time, which amounted to 22 additional nights with his children, was not a substantial change. The court stated:

> "[B]oth parties have a need to maintain their respective homes and transportation for the children and to carry the expenses related to same. Ryan has not shown that his expenses for such have increased or that Stacy's have decreased. And Ryan has failed to present specific evidence showing why his incidental expenses related to his children – such as food, clothing, medicine or entertainment – have increased or that Stacy's have decreased to such an extent that a finding of substantial change in circumstances is warranted."

¶ 13                                    ANALYSIS

¶ 14        Pursuant to section 510(a)(1) of the Illinois Marriage and Dissolution of Marriage Act

(Act), an order for child support may be modified "upon a showing of a substantial change in

circumstances." 750 ILCS 5/510(a)(1) (West 2018). The moving party bears the burden of

showing that a substantial change in circumstances has occurred since entry of the original child

support judgment. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1021 (2003). Courts are

afforded wide latitude in determining whether a substantial change in circumstances has taken

place. *In re Marriage of Saracco*, 2014 IL App (3d) 130741, ¶ 16. "[W]e will not disturb a trial

court's 'substantial change' finding unless no reasonable person would agree with the decision."

*Id*.

¶ 15                          A. Changes in Child Support Guidelines

¶ 16        In 2015, when the trial court entered its child support award in this case, the Act's child

support guidelines were based on a percentage-of-obligor-income model, requiring the

noncustodial parent to pay a percentage of his or her net income to the custodial parent. See 750

ILCS 5/505(a)(1) (West 2014). Under those guidelines, a noncustodial parent with two children

was required to pay 28% of his net income to the custodial parent. *Id*.

¶ 17        In 2017, the Illinois General Assembly passed Public Act 99-764 (eff. July 1, 2017), which

drastically changed the child support guidelines. See 750 ILCS 5/505 (West 2018). The amended

guidelines now provide for an award of child support on an income-shares model, which takes into

account the incomes of both parents. See *id*. The amended guidelines apply to child support

proceedings commenced after July 1, 2017. P.A. 99-764 (eff. July 1, 2017). If a child support

judgment was entered prior to July 1, 2017, the amended guidelines will be applied only if the

5

obligor can establish a substantial change in circumstances. See *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 20.  Section 510(a) of the Act states:

> "The court may grant a petition for modification that seeks to apply the changes made to subsection (a) of Section 505 by Public Act 99-764 to an order entered before the effective date of the Public Act 99-764 only upon a finding of a substantial change in circumstances that warrants application of the changes. The enactment of Public Act 99-764 itself does not constitute a substantial change in circumstances warranting a modification." 750 ILCS 5/510(a) (West 2018).

The second sentence of section 510(a) prohibits obligors from claiming that a disparity in child support obligations under the pre-amended guidelines and the amended guidelines constitutes a substantial change in circumstances justifying modification of child support. See *Salvatore*, 2019 IL App (2d) 180425, ¶ 33.

¶ 18                    B. What Constitutes a Substantial Change in Circumstances?

¶ 19        Not all changes in circumstances constitute a substantial change in circumstances for modification of child support purposes. See *In re Marriage of Rash*, 406 Ill. App. 3d 381, 388 (2010). Changes in circumstances warrant modification of child support only when "equitable action by the court" is necessary to protect the children's best interests. See *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 35 (1997). "A substantial change in circumstances typically means the child's needs, the obligor parent's ability to pay, or both have changed since the entry of the most recent support order. *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 79.

¶ 20        A substantial change in circumstances may be based solely on an increase in the supporting parent's ability to pay. *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 29. However, a small increase in the obligor's income does not constitute a substantial change in circumstances.

See *In re Marriage of Armstrong*, 346 Ill. App. 3d 818, 822-23 (2004) (10% increase in salary); *In re Marriage of Butler*, 106 Ill. App. 3d 831, 836, 838 (1982) (8% increase in earnings). This is particularly true where the custodial parent's income has also increased so that both parents have more to spend on the children. See *Armstrong*, 346 Ill. App. 3d at 822-23.

¶ 21       Similarly, an increase in a custodial parent's income will not be considered a substantial change in circumstances where the increase is small compared to the non-custodial parent's income. See *Salvatore*, 2019 IL App (2d) 180425, ¶ 34 (no substantial change of circumstances where mother's monthly gross income increased by $3,451 and father's net monthly income was $25,312). Additionally, a custodial parent's increase in income may be offset by the presumed increase in the cost of raising children. See *In re Marriage of Riegel*, 242 Ill. App. 3d 496, 499 (1993) ("a court may presume that the cost of raising children increases as the children grow older"); *People ex rel. Stokely v. Goodenow*, 221 Ill. App. 3d 802, 805 (1991) ("An increase in the child's needs can be presumed on the basis that the child has grown older and the cost of living has risen.").

¶ 22       It is inappropriate to reduce an obligor's child support obligation simply because the noncustodial parent enjoys substantial time with his children. See *In re Marriage of Sobieski*, 2013 IL App (2d) 111146, ¶ 57; *In re Marriage of Demattia*, 302 Ill. App. 3d 390, 394 (1999). Although a noncustodial parent will conceivably incur additional costs when caring for children, a reduction in child support is unnecessary unless the costs are shown to be excessive or uncommon. *Demattia*, 302 Ill. App. 3d at 395. Where the additional costs appear to be normal, no child support reduction is warranted. *Id*. One court explained:

"The benefit a noncustodial parent receives from having substantial involvement with his or her children cannot be measured by dollars. There should not be an

7

automatic deduction in child support because a noncustodial parent has the opportunity to spend substantial time with the children and fulfill a parental responsibility. Caring for one's own children is not day care nor is it a chore for which to be compensated." *Id.*

¶ 23   A substantial change in circumstances should not be found when the parties' present circumstances were contemplated when the parties entered into their marital settlement agreement. *Salvatore*, 2019 IL App (2d) 180425, ¶ 24. "[C]ourts should remain reluctant to find a substantial change in circumstances based on events that were contemplated and expected when a party's child support obligation was calculated under the prior guidelines." *Id*. ¶ 33.

¶ 24                   C. Did Ryan Establish a Substantial Change in Circumstances?

¶ 25   Here, Ryan attempted to establish a "substantial change in circumstances" so that his child support obligation would be calculated under the amended guidelines, thereby reducing his monthly support obligation. Because Ryan cannot rely on the legislature's amendment of the child support guidelines to establish a substantial change in circumstances (see 750 ILCS 5/510(a) (2018); *Salvatore*, 2019 IL App (2d) 180425, ¶ 33), he alleged that several "changes" have occurred since the trial court's entry of the child support order in 2015. However, none of Ryan's alleged "changes" are individually or collectively "substantial," requiring modification of the child support order.

¶ 26   First, Ryan's ten percent increase in income is not substantial enough to justify a modification of child support. See *Armstrong*, 346 Ill. App. 3d 818, 822-23 (holding that 10% increase in obligor's income was not a substantial change in circumstances). Furthermore, an increase in Ryan's income will never constitute a substantial change in circumstances because the MSA contains a true-up provision that requires Ryan to pay 28 percent of any income he earns

8

over the $100,000 annual salary he earned when the MSA was entered. Because an increase in Ryan's income was contemplated by the parties when they entered into the MSA and the MSA states how an increase in Ryan's salary will change his child support obligation, Ryan's salary increase does not constitute a substantial change in circumstances. See *Salvatore*, 2019 IL App (2d) 180425, ¶ 24.

¶ 27 Additionally, Stacy's increased income does not constitute a substantial change in circumstances. An increase in a custodial parent's income is usually offset by the presumed increase in the cost of raising a child. See *Riegel*, 242 Ill. App. 3d at 499; *Goodenow*, 221 Ill. App. 3d at 805. Here, Stacy's annual salary has increased by slightly more than 12 percent since 2015. This is not a significant increase. Furthermore, Stacy's receipt of dividend income does not amount to a substantial change in circumstances because the parties were fully aware of Stacy's inheritance when they entered into the MSA. See *Salvatore*, 2019 IL App (2d) 180425, ¶ 24. Pursuant to the MSA, Stacy received a portfolio and life insurance proceeds totaling $750,000 as her separate property. Stacy began receiving dividend income from that property in 2015. Although Stacy did not include her dividend income in her 2015 financial affidavit, Ryan never testified that he was unaware of Stacy's dividend income. Moreover, even considering Stacy's dividend income, her gross income of approximately $100,000, is still less than half of Ryan's gross income, which is over $200,000. Because Stacy's income remains substantially less than Ryan's, an increase in her income does not support a finding of a substantial change in circumstances. *Id*. ¶ 34.

¶ 28 Furthermore, Ryan's increase in visitation is not a substantial change warranting modification of child support. A noncustodial parent who spends considerable time with his children is not entitled to a reduction in child support. See *Sobieski*, 2013 IL App (2d) 111146, ¶ 57; *Demattia*, 302 Ill. App. 3d at 394. While Ryan will likely incur some additional costs while

9

caring for his children, he failed to show that his additional costs are excessive or uncommon. Absent such a showing, a modification of child support is unnecessary. See *Demattia*, 302 Ill. App. 3d at 395.

¶ 29 Finally, a consideration of the collective "changes" alleged by Ryan do not justify a modification of child support. Moderate increases in both parties' incomes do not amount to a "substantial change in circumstances." See *In re Marriage of Plotz*, 229 Ill. App. 3d 389, 392 (1992). As the children grow, it is presumed that their financial needs will also increase, so more money will be necessary to meet their needs. See *Riegel*, 242 Ill. App. 3d at 499; *Goodenow*, 221 Ill. App. 3d at 805. Because Ryan and Stacy now have higher incomes, they both have more money available to support their children.

¶ 30 While both parents are financially responsible for supporting their children, Stacy, as the custodial parent is responsible for maintaining their standard of living. *Demattia*, 302 Ill. App. 3d at 395. The record indicates that Ryan's child support payments, in addition to Stacy's income, are used for housing, food, clothing and additional expenses for the children. There is no evidence that Stacy is receiving a windfall from Ryan's support payments. The trial court did not abuse its discretion in finding that Ryan failed to establish a substantial change in circumstances warranting modification of child support.

¶ 31 CONCLUSION

¶ 32 The judgment of the circuit court of Will County is affirmed.

¶ 33 Affirmed.