**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220018-U

Order filed March 16, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF DAVID OSWALD, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | Appeal No. 3-22-0018 Circuit No. 13-D-1692 |
| JULIE E. OSWALD, | ) ) ) | Honorable Derek Ewanic, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  The court did not abuse its discretion when it entered an order modifying maintenance and child support.

¶ 2        Petitioner David Oswald filed a petition to modify maintenance and child support. Following a hearing, the Will County circuit court entered an order modifying both. Respondent Julie E. Oswald appeals, arguing that the circuit court's modification constituted an abuse of discretion. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          David and Julie were married on March 20, 1999. During their marriage, the parties had

two children, B.O. and P.O. David filed a Petition for Dissolution on September 17, 2013. On

June 17, 2015, a judgment of dissolution was entered, which incorporated the parties' previously

agreed upon marriage settlement agreement (MSA) and custody agreement.

¶ 5          At the time of the parties' dissolution of marriage, David was employed at PNC

Mortgage, and his gross income was approximately $145,000.00 including commissions. Julie

was employed as a real estate agent. Julie worked part time for most of the marriage due to

behavioral issues with the parties' younger child. At the time of judgment, Julie was earning

approximately $18,000.00.

¶ 6          When the dissolution judgment was entered, the parties' children were still minors.

Pursuant to the MSA, David was ordered to pay $450.46 bi-weekly in child support, which

amounted to 28% of his net income, the statutory requirement at the time of dissolution. In

addition, David paid "as and for modifiable and reviewable maintenance" $213.09 bi-weekly.

Due to the flexibility in the parties' income, David and Julie were required to exchange tax

returns every year to verify the amount David paid was accurate after including David's

commission into his reported salary.

¶ 7          In December 2018, an agreed order was entered adjusting both child support and

maintenance. Pursuant to the agreed order, David's total monthly payments were increased to

$1,022.00 in child support and $2,571.00 in maintenance. These calculations were based on a

three-year average of David's gross earnings, equaling approximately $150,000.00. By this time,

Julie's gross income had increased to approximately $50,000. The maintenance amount was

calculated based on the guidelines set forth in 750 ILCS 5/504 (West 2018). The statute required

2

that maintenance should be 30% David's gross income, less 20% Julie's gross income, subject to a cap on Julie's gross income and maintenance award at 40% of the parties' combined gross income. *Id.* The agreed order also eliminated the requirement that the parties exchange financial documents every year to verify support amounts were accurate. The reason for this requirement was because both parties' incomes included commissions and had the potential to change from year to year.

¶ 8 On March 1, 2021, David filed a petition to modify his maintenance and support obligations. In his motion, David argued that he accepted a new position at loanDepot and anticipated a 10% decrease in income as a result. He also alleged that Julie's income had substantially increased and that there was a substantial change in circumstances due to that change in income, warranting a modification in maintenance and child support.

¶ 9 On November 18, 2021, a hearing took place on David's petition. At the hearing, David testified that one of the parties' children was 21 years old and in college. The other was 16 and in high school. He further testified that he left PNC Mortgage to work at loanDepot due to restructuring at PNC. He anticipated that he would receive a decrease in pay because of his change in employment. In reality, David's income increased, partly because he received a one-time sign on bonus and also because he had been working long hours and weekends. He filed his taxes jointly with his wife, and his wife's employer covered health insurance for the entire family. He also shared all living expenses with his wife. David was not exercising any of his parenting time. At the time of filing his latest financial affidavit in September 2021, David had approximately $700,000.00 worth of assets in property, various bank accounts, investments, and retirement accounts. His gross income through September 15, 2021, was an estimated $153,000.00.

¶ 10 Julie testified that she had an increase in income due to productivity coaching she conducted online during the pandemic. She anticipated her income to decrease now that there was not as much of a demand for online coaching, and she could not take as many clients when coaching in person. Additionally, she testified that her position as a real estate agent meant that the bulk of her income came during the summer months. She did not anticipate earning any more the rest of the year. According to her affidavit filed in November 2021, she had approximately $400,000.00 in assets in various checking, savings, and investment accounts, a retirement account, the marital home, and vehicles. She estimated her gross business receipts for the year to be approximately $216,000, $43,000 of which she estimated would be spent on business expenses.

¶ 11 After the hearing, the circuit court found that Julie's increase in income constituted a substantial change in circumstances that was not contemplated by the parties in their 2018 agreed order. Her gross income had increased from $51,000 to over $200,000 in three years' time, which the court calculated to be an increase of nearly 3 ½ times her previous income. It found that there was nothing in the 2018 agreed order to indicate that the parties intended to prevent the other from requesting modifications to it. Further, the court reviewed the statutory factors that applied when considering whether to modify maintenance and found that modification would be appropriate in this case. The court ordered the parties to submit new calculations of support, with an average income figured by the parties' tax returns from the last three years.

¶ 12 The parties returned to court on December 6, 2021, stating that they had not reached an agreement on calculations. Julie's attorney raised a concern regarding the income David's attorney used in calculations. David's income did not include numbers related to his real estate business or any income beyond September 15, 2021. Julie's income was provided up to October

4

31, 2021, and David's calculations did not reflect the $43,000.00 in business expenses that should be removed from her anticipated income for the year. Further, David did not provide an exact cost of the health insurance he was required to keep on his children. He stated that six people were covered by the insurance plan: his wife, him, his two children, and her two children. In order to calculate his costs of insurance, he simply allotted himself a credit for two-sixths of the health insurance premium.

¶ 13   On December 8, 2021, the court entered an order modifying the amount of child support, increasing it to $1,073 per month. The order stated that it used the statutory calculations set out in 750 ILCS 5/505 and based the calculations on David's three-year average income of $173,000.00 and Julie's three-year average income of $124,000.00. David's proposed order also terminated maintenance; however, the court clarified that it was modifying maintenance instead of terminating it. It modified maintenance by decreasing the monthly amount to $0 and ordered for the regular production of income information to determine whether maintenance must be modified in the future. Julie appealed.

¶ 14                                        II. ANALYSIS

¶ 15   On appeal, Julie argues that the circuit court abused its discretion by reducing David's maintenance obligation to $0. Specifically, she contends that the circuit court made a calculation error and that the maintenance award should not have been reduced. She also argues that the court erred in its child support calculations.

¶ 16   In support of his petition to modify maintenance and support, David presented evidence that Julie's gross income increased from $51,000.00 to over $200,000.00. Based on this change in circumstances, the circuit court recalculated support resulting in an increase in monthly child

support from $1,022.00 to $1,073.00 per month and a reduction in the monthly maintenance payment to $0.

¶ 17    The decision to modify a maintenance award is within the trial court's discretion and will not be disturbed absent an abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24. An abuse of discretion occurs when "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

¶ 18    Section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that an order for maintenance may be modified "only upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a-5) (West 2020). The party seeking the modification has the burden of showing that a substantial change in circumstances has occurred. *In re Marriage of Logston*, 103 Ill. 2d 266, 287 (1984).

¶ 19    In deciding whether to modify maintenance, the court must consider the same factors set forth in section 504(a) of the Act that are to be considered at the time that maintenance is initially awarded, which include: (1) the income and property of both parties; (2) the needs of each party; (3) the present and future earning capacity of each party; (4) any impairment of the earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage; (5) any impairment of the present or future earning capacity of the party against whom maintenance is sought; (6) the time required for the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or any parental responsibility arrangements and its effect on the party seeking employment; (7) the standard of living established during the marriage; (8) the duration of the marriage; (9) the age, health, station, occupation, amount and

sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties; (10) all sources of public and private income; (11) the tax consequences of the property division; (12) the contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse; (13) other valid agreements of the parties; and (14) any other factor that the court expressly finds to be just and equitable. 750 ILCS 5/504(a) (West 2020).

¶ 20        The section 510(a-5) factors that should also be considered when determining whether to modify or terminate maintenance include: (1) changes in employment status and whether the changes were made in good faith; (2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of those efforts; (3) any impairment of the present and future earning capacity of either party; (4) the tax consequences of the maintenance payments; (5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage; (6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage and the present status of the property; (7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought; (8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage; and (9) any other factor that the court expressly finds to be just and equitable. 750 ILCS 5/510(a-5)(1)-(9).

¶ 21        In this case, the court provided a detailed explanation of its application of the statutory factors. In determining that a substantial change occurred, the court specifically considered the parties' incomes and assets, expenses of the children, the parties' earning capacities, any impairment on future earnings, and standard of living during the marriage. It also distinguished

7

this case from *In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 26, which Julie cited to support her position. In *Connelly*, this court found that an increase in income of approximately 12% was not a significant increase for the purposes of determining whether to modify maintenance. *Id*. This court held that the increase could be offset by the increasing costs of raising children. Further, the mother's income was still less than half of the father's income. Here, however, the circuit court found that an increase of three times Julie's previous salary was enough to find that a substantial change had occurred and warranted modification of maintenance and support. Julie's salary also increased to the point that it is almost equal to David's income. In light of these factors, we cannot say that the circuit court abused its discretion in finding a substantial change in circumstances.

¶ 22       We next address the modification itself. Where a party has shown such a substantial change in circumstances, the court may modify maintenance obligations, but it is not required to do so. *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 204 (2011). After determining whether a substantial change has occurred, the court must then consider whether a modification is warranted under the factors listen in sections 510(a-5) and 504(a) of the Act. 750 ILCS 5/510(a-5); *Heroy*, 2017 IL 120205, ¶ 25. After weighing these factors, the court may decide that, even though a substantial change has occurred, a modification is not justified. *Anderson*, 409 Ill. App. 3d at 204.

¶ 23       Julie argues that the court did not sufficiently consider the parties' financial circumstances and miscalculated her earnings when it did not subtract her estimated $43,000 business expenses from her $216,000 gross business income. Under 750 ILCS 5/504, calculation of maintenance shall be calculated by taking 30% of David's gross income, minus 20% of Julie's gross income. The amount in maintenance, when added to Julie's gross income, may not exceed

40% of the combined gross income of the parties. *Id.* Even deducting $43,000 from Julie's gross business income ($170,000) and calculating maintenance based on the above calculations (using David's average of $173,000 a year), Julie's income and maintenance would still exceed the statutory cap. Her current salary is almost equal to David's salary. When evaluating maintenance based on the last three years' salaries and deducting the $43,000 in business expenses, the amount of Julie's income and maintenance would also exceed the cap. Thus, the circuit court did not abuse its discretion in calculating maintenance and support.

¶ 24                                III. CONCLUSION

¶ 25        The judgment of the circuit court of Will County is affirmed.

¶ 26        Affirmed.