**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240330-U

Order filed June 12, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| CAROLYN M. CONKLIN n/k/a | ) | Du Page County, Illinois, |
| CAROLYN M. ELBRECHT, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-24-0330 |
| | ) | Circuit No. 11-D-2135 |
| and | ) | |
| | ) | Honorable |
| EDWARD K. CONKLIN, | ) | Alexander F. McGimpsey III, |
| | ) | Judge, Presiding. |
| Respondent-Appellant. | ) | |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Hettel and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:   The court's determination that there was no substantial change in circumstances to warrant modification of maintenance was not against the manifest weight of the evidence.

¶ 2       Respondent, Edward K. Conklin, appeals the circuit court's order denying his petition for modification of maintenance. Edward argues that the court erred as a matter of law by construing a prior modification order to preclude a modification for a substantial change in circumstances

related to payments under an uncapped percentage provision. He further argues that the court abused its discretion by allowing petitioner, Carolyn M. Conklin n/k/a Carolyn M. Elbrecht, to receive maintenance in an amount well in excess of that necessary to maintain the marital standard of living. We affirm.

¶ 3                                         I. BACKGROUND

¶ 4        The parties were married in 1988. They had three children. The parties divorced in 2012, and the judgment of dissolution incorporated the parties' marital settlement agreement. Said agreement provided that Edward would pay Carolyn, as unallocated family support, $6,250 per month and 45% of the net amount of any income in excess of Edward's base pay, which was $201,272 at that time. Regarding the income in excess of Edward's base pay, the agreement specifically excluded income received incident to the exercise of options and restricted stock from Edward's employment with McDonald's. The agreement also provided that the unallocated support would be modifiable based upon a substantial change in circumstances.

¶ 5        In 2017, Edward filed a motion to terminate support or other relief. An agreed order regarding future maintenance was entered on March 2, 2018. That agreement provided that Edward would pay Carolyn $5,917 per month in maintenance based upon his base salary of $250,000 and 30% of any gross income in excess of that base. Additionally, the order stated that income earned from liquidation of benefits awarded to Edward in the dissolution, any liquidated 401(k) benefits, and investment income unrelated to employment benefits were excluded. The order also provided that maintenance was modifiable upon a substantial change in circumstances.

¶ 6        Two years later, in March 2020, Edward filed a petition for modification of maintenance. He argued that the uncapped maintenance order established a windfall for Carolyn that had no relation to her needs or the marital standard of living. Edward further argued that Carolyn had

2

not made good faith efforts to become self-supporting and that her expenses decreased as all children had emancipated and completed college studies. Edward sought to reduce or terminate his maintenance obligation.

¶ 7    The court held an evidentiary hearing on the petition. Testimony and exhibits were presented to the court. During argument on the petition, Edward's counsel clarified that the purported change in circumstances was due to his increased income. The court took the matter under advisement and later issued a ruling.[1] The court noted that it found both Edward and Carolyn to be credible witnesses and did not believe the facts were in dispute but rather the legal interpretation of the facts was in dispute. The court found that the increase in Edward's income was foreseeable and contemplated by the parties in the March 2, 2018, agreed order due to the percentage provision such that it could not be considered a changed circumstance. The court also found that the increased income was contemplated based on the testimony. Specifically, the court noted that there was "significant testimony of [Edward], that he knew that the income that he had earned in the form of McDonald's stock options prior to the 3/2/18 amendment of the judgment would be considered income that would fall under the 30 percent gross formula." The court also noted the testimony regarding the execution of the McDonald's stock options in 2021. In reviewing Edward's testimony, we note that Edward acknowledged that as of March 2018 he had a history of exercising some stock options from McDonalds and earning income by doing so. Edward also testified that in March 2018 he was aware of the McDonald stock options he earned from 2013 to 2016 and knew that when he exercised those options he was going to have an

---

[1]As the factual findings by the court that are relevant to this order are largely not in dispute, we generally set forth those findings rather than referencing exhibits or testimony; however we reference testimony related to the disputed findings. There are some minor discrepancies between income amounts found by the court and those cited in Edward's brief; however, Edward does not challenge the court's findings in this regard on appeal, the discrepancies are minor, and regardless of which numbers we relied on, it would not alter the analysis herein.

increase in income. Edward testified that he did not understand under the terms of the March 2018 order, that he was required to make payments on income in excess of his base salary. However, he admitted that he made maintenance payments on income in excess of his base salary subsequent to the March 2018 order, including on bonuses and restricted stock. He was then asked "[s]o you understood, sir, that you were obligated to make payments on that income, right?" Edward responded "[u]ntil I got new counsel, yes." The court determined that Edward's "testimony really confirms authoritatively that [Edward] did know and must have contemplated that the increased income would be subject to that maintenance trigger formula." The court specifically found that Edward knew "the McDonald's stock options would be subject to the 30 percent maintenance at the time that he entered into the order of March 2, 2018." The court also addressed the amendment to section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a-5) (West 2022)), which limited the circumstances when foreseeability or contemplation of future events could be considered in determining whether a substantial change in circumstances occurred for purposes of maintenance. The court determined that the amended version did not apply because it was not in effect when the March 2, 2018, order was entered. We also note that it was not in effect when the petition at issue was filed.

¶ 8        Last, the court found that based upon the evidence, regardless of the issue of contemplation or foreseeability pursuant to section 510(a-5), there was no substantial change in circumstance. The court first set forth that there was no significant change in lifestyle for Carolyn either before or after the marriage or the March 2, 2018, order. Additionally, the court found that the children had emancipated prior to the March 2, 2018, order. It found that Carolyn's needs and expenses had not changed. The court set forth the following factual findings regarding the amount of Edward's income in various years based upon the evidence presented

4

during the hearings: 2008—$1,000,016; 2009—$285,000; 2010—$275,000; 2011—$643,000; 2012—342,000; 2016—$575,000; 2017—$867,000; 2018—$465,000 or $512,000; 2019—$460,000 or $361,000; 2020—$389,000 or $374,000; and 2021—$2,130,000.[2] As to the year 2021, the court noted that $234,000 was income from the exercise of options that Edward was awarded in the dissolution, such that it was not an increase in income for maintenance purposes. Additionally, the court found that the majority of income from 2021, aside from Edward's base salary, came from the exercise of stock options from McDonald's that were earned post-dissolution, from 2013-2016. The court also found that Edward knew those options had been earned and existed when he entered the March 2, 2018, agreed order. The court further noted that Edward earned over $1 million in one year during the marriage and prior to 2018 there were earnings of $867,000 and $575,000 per year. Although not noted in the order, testimony indicated that the years with substantially higher income were years in which Edward had exercised stock options. The court found that the substantial increase in income in 2021[3] could not be considered a substantial change in circumstances because the increase was generated by the exercise of stock options earned prior to and in existence at the time of the March 2, 2018, agreed order. The court found that irrespective of the foreseeability or contemplation issue, there was not a substantial change in income based upon the financial history that the evidence showed. The court denied Edward's petition for modification or termination of maintenance. Edward appeals.

---

[2] For the years that have two different income amounts listed, 2018-2020, the court indicated that different exhibits showed different amounts. Essentially, there were different amounts stated by tax documents and pay stubs.

[3] We note that the 2021 increase was a one-time spike in income as a result of Edward's cashing in his accumulated stock shares.

II. ANALYSIS

¶ 10     Edward argues that the court erred as a matter of law by finding that an increase in his income could never be a substantial change in circumstances because of the uncapped percentage of income provision in the March 2, 2018, agreed order. He further argues that the court erred as a matter of law by refusing to apply the amended version of section 510(a-5) of the Act in considering the foreseeability/contemplation issue and that regardless, the court's finding on contemplation was against the manifest weight of the evidence. Additionally, Edward argues that the court abused its discretion by denying his petition to modify or terminate maintenance.

¶ 11     Initially, we note that we need not decide whether, and do not hold that, an increase in Edward's income could never be a substantial change in circumstances due to the uncapped percentage of income provision in the March 2, 2018, agreed order. Instead, we affirm based on the additional reasons the court expressed in its decision. However, we acknowledge that some courts have held that an increased income cannot be a substantial change in circumstances in light of an uncapped percentage provision (see *In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 25 (stating "an increase in [payor's] income will never constitute a substantial change in circumstances because the MSA contains a true-up provision that requires [payor] to pay 28% of any income he earns over the $100,000 salary he earned when the MSA was entered"); *In re Marriage of Durdov*, 2021 IL App (1st) 191811, ¶ 28 (finding that a provision requiring payor to pay 28% of "*any additional net income received* from any other source" showed that the parties contemplated the payor's earnings could exceed the salary he was earning at the time of the divorce such that "the increase in his salary cannot constitute a substantial change in circumstances"), while another court found a substantial change in circumstances despite a percentage provision, although not as broad of a percentage provision as those at issue in

*Connelly* and *Durdov* (see *In re Marriage of Yabush*, 2021 IL App (1st) 201136, ¶ 34 (stating that although the parties' agreed judgment included a provision requiring payment of 28% of the net income from any bonuses or commission, which provided for fluctuation in income via bonuses and commissions, the court could not "say that the parties contemplated that *any* increase in income would not be a substantial change in circumstances")).

¶ 12        "An order of maintenance may be modified only upon a showing of a substantial change in circumstances since the most recent award." *In re Marriage of Osseck*, 2021 IL App (2d) 200268, ¶ 47. The party seeking modification has the burden of proving a substantial change in circumstances. *Id.* "When the trial court finds that no substantial change in circumstances has occurred, we review whether the manifest weight of the evidence supports the finding." *In re Marriage of Wengielnik*, 2020 IL App (3d) 180533, ¶ 12. "A decision is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based upon the evidence." *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44.

¶ 13        First, we address the arguments regarding contemplation of the increased income and the applicability of the amended version of section 510(a-5) of the Act, which became effective on May 13, 2022. "We review *de novo* a trial court's ruling on an issue of statutory construction." *In re Marriage of Benink*, 2018 IL App (2d) 170175 ¶ 26. Prior to the amendment, the state of the law was that a substantial change in circumstances would not be found when the present circumstances were contemplated and/or expected when the maintenance agreement or order was entered. *See In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 30; *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 18; *In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 22. However, section 510(a) was amended to include the following language: "[c]ontemplation or

7

foreseeability of future events shall not be considered as a factor or used as a defense in determining whether a substantial change in circumstances is shown, unless the future event is expressly specified in the court's order or the agreement of the parties incorporated into a court order." 750 ILCS 5/510(a-5) (West 2022). The court in *In re Marriage of Knight*, 2024 IL App (1st) 230629, ¶¶ 23-25, addressed the applicability of the amendment in a similar situation, where a petition to modify was filed prior to the amendment. The court determined that section 801 of the Act (750 ILCS 5/801 (West 2020)) applied to amendments to the Act. *Id.* ¶ 24. Based upon Section 801(c)[4] of the Act, the court concluded that because the "motion to modify was filed before section 510 was amended, the prior version of section 510 applie[d]." *Id.* ¶ 25. We agree with the reasoning of the court in *Knight*, and likewise conclude that because Edward's petition was filed before the amendment to section 510(a-5) the prior version applies. As such, the circuit court could properly look to whether Edward's higher income in 2021, which was essentially comprised of earnings from McDonald's stock options, was contemplated or foreseeable by the parties when the agreed order was entered.

¶ 14        Additionally, we conclude the court's findings that, at the time of the agreed order, the parties contemplated that Edward would receive income from McDonald's stock options if he chose to exercise them and that he would be required to pay 30% of that income to Caryolyn, were not against the manifest weight of the evidence. See *In re Marriage of Bates*, 212 Ill. 2d 489, 523 (2004) (providing that the circuit court's factual findings underlying a decision regarding a maintenance order are reviewed under the manifest weight of the evidence standard). Specifically, the court relied on and made a reasonable inference from Edward's own testimony.

---

[4]Section 801(c) of the Act states "This Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act." 750 ILCS 5/801(c) (West 2020).

See *People v. Bradford*, 2016 IL 118674, ¶ 12 ("It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts."). Edward's testimony showed that at the time the agreed order was entered, Edward knew he had the McDonald's stock options and knew he would realize income from exercising those stock options. Additionally, Edward had exercised McDonald's stock options in the past, which indicated he would be familiar with the amount of income those options could generate. Although Edward testified that he did not understand he was required to make payments on income in excess of his base salary pursuant to the terms of the March 2, 2018, agreed order, he subsequently admitted that he had made maintenance payments to Carolyn on income in excess of his base salary, including income from bonuses and restricted stock options. Edward also admitted that he did understand he had to pay maintenance on income in excess of his base salary "until [he] got new counsel." In light of this testimony, it cannot be said that the court's determination that Edward "did know and must have contemplated that the increased income would be subject to that maintenance trigger formula" was "unreasonable, arbitrary, or not based upon the evidence." See *Romano*, 2012 IL App (2d) 091339, ¶ 44. Additionally, we note that the March 2, 2018, agreed order specifically excluded certain income from the percentage calculation. These items included income from liquidation of benefits awarded to Edward pursuant to the dissolution, liquidated 401k benefits, and investment income *unrelated to employment benefits*. The last provision excluding investment income unrelated to employment benefits shows that the parties understood that investment income received as employment benefits was contemplated and would be included as income in the percentage calculation. Based on the foregoing, we conclude that the court's determination that there was no substantial change in circumstances was not against the manifest weight of the evidence.

¶ 15    Next, we consider whether the circuit court's determination—that regardless of whether the increased income was contemplated, the facts of this case did not show a substantial change in circumstances—was against the manifest weight of the evidence. Here, Edward's income varied throughout the years. During the marriage he had a year in which his income reached $1 million. Additionally, leading up to the March 2, 2018, agreed order, Edward had a year earning $867,000 and a year earning $575,000. Although the approximately $2 million in income in 2021 was considerably more, it was, as the circuit court noted, a "manufactured" increase in the sense that it was only that high because Edward chose to exercise multiple stock options from McDonald's during that year. Those stock options were earned from 2013 through 2016 and were in existence at the time of the March 2, 2018. As such, the circumstances which led to the higher income in the year 2021, existed at the time Edward entered into the March 2, 2018, agreed order. Additionally, the petition for modification was filed in 2020, only approximately two years after the agreed order was entered. Edward's income in 2017, the year before the order, was $867,000. Then in 2018, the year the order was entered, Edward's income was at least $465,000. The next two years, in 2019 and 2020, it was at most $460,000 and $389,000. This income history shows that there was no substantial increase in income during those years following the entry of the March 2, 2018, agreed order and at the time Edward filed his petition for modification. The facially substantial increase in income came in 2021. However, the large increase in income that year was an anomaly caused by Edward's exercise of earned stock options that existed at the time he entered the March 2, 2018, agreed order.

¶ 16    Thus, although Edward had a significantly higher income during one year subsequent to the March 2, 2018, agreed order, the financial history and the reasons for the 2021 increase in income show that this increase was not a substantial change in circumstances. See *e.g.*, *In re*

*Marriage of Dunseth*, 260 Ill. App. 3d 816, 827 (1994) (stating that "when a maintenance payor's income fluctuates a temporary decline does not always necessitate modification"). The circumstances for that increased income to occur existed at the time of the March 2, 2018, agreed order. Moreover, higher than normal income years had occurred in the past, again showing that the circumstance of having aberrant high-income years existed when the March 2, 2018, agreed order was entered. Therefore, it was not a change. Additionally, both the 2012 marital settlement agreement and the 2018 agreed order set forth items that were excluded from income, such as stock options awarded to Edward in the marital settlement agreement and investment income unrelated to employment benefits. Thus, it should not have been a surprise to Edward that his stock options, earned as employment benefits or post-dissolution income from McDonald's, would be included as income and subject to the percentage provision.

¶ 17    In sum, the income Edward earned in 2021 from the exercise of stock options existed at the time he entered the agreed order, it was simply a matter of when Edward chose to receive that income. At the time Edward entered into the agreed order, he was in possession of the stock options, knew that he could liquidate them, and presumably knew their approximate value. Thus, there was nothing new or changed two years later when he filed his petition for modification or three years later when he chose to exercise the stock options. Although Edward argues that his exercise of the stock options resulted in a windfall to Carolyn, it was something he agreed to in 2018. Based on the foregoing, we conclude that the circuit court's finding that Edward had not shown a substantial change in circumstances was not against the manifest weight of the evidence. Thus, his petition for modification was properly denied.

¶ 18                                    III. CONCLUSION

¶ 19    The judgment of the circuit court of Du Page County is affirmed.

11

¶ 20       Affirmed.